FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ DEC 12 2013 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------

IN THE MATTER OF THE SEIZURE OF ALL      **FILED UNDER SEAL, EX PARTE**
FUNDS AND OTHER THINGS OF VALUE
DEPOSITED IN:

WOORI AMERICA BANK ACCOUNT 601001118,
HELD IN THE NAME OF VICTORIA KEENEN, IN      M-13-
THE AMOUNT OF $270,000.00, MORE OR LESS,
AND ALL PROCEEDS TRACEABLE THERETO;
AND                                        **MC-13-1078**
                                                      ALT
AXA EQUITABLE EQUI-VEST DEFERRED
VARIABLE ANNUITY, ACCOUNT NO. 208925927
HELD IN THE NAME OF LAURA ANN TORDY,
IN THE AMOUNT OF $23,064.23, MORE OR LESS
AND ALL PROCEEDS TRACEABLE THERETO

----------------------------------------------------------------

### DECLARATION OF FBI SPECIAL AGENT ROBERT M. CAPPADONA IN SUPPORT OF SEIZURE WARRANTS

ROBERT M. CAPPADONA, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury as follows:

1.      For the last seventeen years to date, I have been a Special Agent of the Federal Bureau of Investigation ("FBI"). During that time I have investigated numerous cases involving violations of federal offenses committed using the United States mail and interstate carriers, money laundering, securities fraud and asset forfeiture, during the course of which I have reviewed extensive financial records.

2.      I submit this affidavit in support of the government's application for a warrant to seize: (1) all funds on deposit at Woori America Bank Account 601001118, held in name of Victoria Keenen, in the amount of $270,000.00, more or less, and all proceeds traceable thereto; and, (2) all funds on deposit at AXA Equitable EQUI-Vest Deferred Variable Annuity, Account No. 208925927, held in the name of Laura Ann Tordy, in the amount of $23,064.23,

or less, and all proceeds traceable thereto, because, as more fully discussed below, there is probable cause to believe that the accounts contain proceeds of mail fraud; specifically the proceeds of a Ponzi scheme devised and executed by Nicholas Cosmo and others.

3.     I am familiar with the information contained in this affidavit based, among other things, on my own personal participation in the investigation, my review of documents, and conversations I have had with other law enforcement agents.[1]

**A.**    **Introduction**

4.     From approximately October 2003 through December 2008, Cosmo devised and executed a scheme to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises. For the purpose of executing such scheme, Cosmo used the United States mail and private and commercial interstate carriers to deliver certain matters and things, including envelopes containing checks of purported interest payments, in violation of 18 U.S.C. § 1341.

5.     On April 23, 2009, a grand jury in the Eastern District of New York returned an Indictment charging Cosmo with ten counts of wire fraud (18 U.S.C. §§ 1343, 3551, et seq., and 22 counts of mail fraud (18 U.S.C. §§ 1341, 3551, et seq.). On October 29, 2010, Cosmo pled guilty to Counts One and Eleven of the Indictment, charging him with Wire and Mail Fraud, in violation of 18 U.S.C. §§ 1341, 1343 and 3551 et seq. On October 14, 2011, Cosmo was sentenced and, as part of his sentence, the court entered a Forfeiture Money Judgment in the sum of $409,305,000 and a Final Order of Forfeiture for various seized accounts, in the aggregate sum of $1,150,000. United States v. Cosmo, CR-09-255 (Hurley, J.).

---

[1]    Because the purpose of this complaint is to state only probable cause to seize accounts, I have not described all the relevant facts and circumstances of which I am aware.

**B.**   **The Overall Scheme To Defraud**

6.     Cosmo was the owner of both Agape World, Inc. ("Agape"), and Agape Merchant Advance, LLC ("AMA").  Agape purported to be a bridge loan lender and AMA purported to be a lender of cash to commercial entities that accept credit cards.  An investigation conducted by Special Agents of the FBI and of the United States Postal Inspection Service showed that, at the direction of Cosmo and others, Agape and AMA operated in a manner consistent with what is commonly referred to as a "Ponzi scheme"; that is a fraudulent investment scheme that involves promising or paying abnormally high returns to early investors out of the money provided by subsequent investors – who are left with nothing when the scheme ultimately collapses -- rather than from any net revenues generated by a real business.  More than 1,500 individuals had invested in Agape and AMA.

7.     In furtherance of the Ponzi scheme, Agape representatives solicited thousands of individuals for investments by promising annualized rates of return of approximately 48% to 80%.  Among other things, they told potential investors that: Agape was a bridge loan lender that made secured loans to commercial entities, usually for a period of up to seventy days; the investors' entire investment would be used to fund one of those loans; and the investors would receive all the interest.

8.     The Agape representatives solicited investments in AMA by informing potential investors that AMA provided merchants with commercial loans secured by the merchants' future credit card sales.  Furthermore, they told investors that their investment principal was locked in for a period of two years but would pay interest of 4% each month (an annualized rate of 48%).

9.      Cosmo caused 13 separate bank accounts to be opened at Bank of America in the name of Agape. One of the 13 accounts in the name of Agape was the Agape operating account, while the remaining 12 accounts were subsidiary accounts. Virtually all deposits made into these accounts consisted of investor money. At the end of each business day, Cosmo caused the balances in all of the 12 subsidiary accounts to be transferred to the Agape operating account.

10.     Cosmo also caused 13 separate bank accounts to be opened at Bank of America in the name of AMA. One of the 13 accounts in the name of AMA was the AMA operating account, while the remaining 12 accounts were subsidiary accounts. Virtually all deposits made into these accounts consisted of investor money. At the end of each business day, Cosmo caused the balances in all of the 12 subsidiary accounts to be transferred to the AMA operating account.

11.     Despite the representations to the investors by Cosmo and by Agape and AMA representatives, Agape, AMA and Cosmo did not loan all of the incoming investor money to outside commercial entities; rather, Agape and AMA bank records and other financial institution records showed that from January 2006 to January 2009, Agape and AMA had deposited more than $370 million in investor monies into the above accounts, but had used less than $10 million of that amount for the stated purposes of loans to commercial borrowers.

12.     Further, the investigation revealed that much of the money paid back to investors was actually money provided by subsequent investors, rather than interest payments provided to Agape and AMA by commercial borrowers.

13.     The records showed that Cosmo frequently made transfers between the Agape and AMA accounts and frequently commingled Agape investor funds, which were supposed to be for a specific bridge loan recipient, with AMA investor funds, which were

supposed to be advanced to a consortium of merchants.

14.     Between October 2003 and October 2008, Cosmo caused a transfer of more than $100 million in investor funds from the Agape operating account to trading accounts he maintained with at least seven different futures trading firms.  Cosmo incurred combined trading losses in excess of $80 million during that time.

15.     Further, Cosmo used investor monies to pay in excess of $55 million dollars in commissions to Agape and AMA representatives.

## C.     The Court Should Issue A Seizure Warrant For Woori America Bank Account 601001118 Because It Contains The Proceeds Of Mail Fraud

16.     The court should issue a seizure warrant for the funds, and all proceeds traceable thereto, on deposit at Woori America Bank Account 601001118, held in the name of Victoria Keenen, identified below in ¶¶ 25-28, because based on the tracing described below, there is probable cause to believe that the funds in that account contain proceeds traceable to the mail fraud utilized to execute the Ponzi scheme described above.  Those funds are thus subject to forfeiture pursuant to 18 U.S.C. § 981(a) (1) (C) and 28 U. S. C. § 2461(c), as property which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1341.

### 1.     Fraud Proceeds Paid To Anthony Ciccone

17.     Anthony Ciccone worked as a representative for AGAPE and AMA from early 2006 to 2009.  According to the analysis of bank records by law enforcement agents in the time period of June 2005 to December 2008, he received more than $12.1 million collectively in payments from AGAPE or AMA bank accounts.  In excess of $2,000,000 of these payments deposited into JP Morgan Chase account 091-1737562-65 ("Chase Account 65"), in the name of Anthony Ciccone Enterprises (Ciccone's nominee business).  The monies paid to Ciccone consist

of investor funds and are thus proceeds of the mail fraud.

18. On May 22, 2012, a grand jury in the Eastern District of New York returned an Indictment charging Anthony Ciccone and others with seventeen counts of mail and wire fraud arising out of the Ponzi scheme (18 U.S.C. §§ 1341, 1343, 3551, et seq.). The criminal proceedings are currently pending. See, United States v. Keryc, CR-12-357 (Hurley, J.)

19. Between January 1, 2008 and December 31, 2008, Anthony Ciccone made withdrawals from Chase Account 65 to pay approximately $600,000 to New York State and approximately $1,400,000 to the United States as income taxes on his earnings in 2008 from Agape and AMA. Anthony Ciccone and his wife, Maureen Ciccone, filed joint state and federal income tax returns for that year.

**2. Federal And State Tax Refunds Checks Paid To The Ciccones**

20. On or about March 14, 2012, the Ciccones received a tax refund check in the amount of $471,271.44 from New York State as an overpayment of their 2008 New York State income taxes. On March 14, 2012, that tax refund check was deposited into a Bank of America account 4380 3577 8212, held in the name of Maureen Ciccone ("BOA Account 8212"). 21. On or about March 16, 2012, the Ciccones received a federal tax refund check in the amount of $1,207,004.49 as an overpayment of their 2008 income taxes. On March 23, 2012, Maureen Ciccone opened an account at Community National Bank, Account No. 50009880 ("Community Bank Account"). That same day, she deposited the federal tax refund check into the Community Bank Account.

22. On March 23, 2012 Maureen Ciccone opened an account at Shinhan account no. 702000040425, held in the name of Maureen Ciccone ("Shinhan Account 425"). That same day, she withdrew the amount of approximately $540,000 from BOA Account 8212

deposited it into Shinhan Account 425. Those funds include the New York State tax refund in amount of $471,271.44.

23.     On April 23, 2012, Maureen Ciccone withdrew the entire $1,207,257.85 balance, in the form of a bank check and closed the Community Bank Account. On July 24, 2012, she deposited the bank check into Shinhan Account 425. Those funds consist of the entire federal tax refund.

24.     On August 3, 2012, Maureen Ciccone opened a checking account at Shinhan Bank, account no. 700000330865, held in the name of Maureen Ciccone ("Shinhan Account 865"). On August 3, 2012, she transferred approximately $250,000 from Shinhan Account 425 to Shinhan Account 865.

## 2.     Deposits of The Federal And State Tax Refunds Into The Woori Account

25.     On September 27, 2012, Victoria Keenen, Maureen Ciccone's mother, opened an account at Woori America, account no. 601001118, held in the name of Victoria Keenen ("Woori Account").

26.     On August 14, 2012, Maureen Ciccone withdrew the sum of $500,000.00 from Shinhan Account 425 and obtained a cashier's check in that amount payable to Keenen. On September 27, 2012 Keenen deposited that bank check into her Woori Account.

27.     On September 29, 2012, Maureen Ciccone withdrew $150,000 from Shinhan Account 865 and wrote a check in that amount payable to Keenen. On October 4, 2012, Keenen deposited that check into the Woori Account.

28.     To date, the Woori Account has a balance of $270,000. Those funds consist of proceeds traceable to mail fraud and are thus subject to forfeiture.

**D.**     **The Court Should Issue A Seizure Warrant For AXA Equitable EQUI-Vest**
           **Deferred Variable Annuity Because It Contains The Proceeds Of Mail Fraud**

        29.     The court should issue a seizure warrant for the funds, and all proceeds
traceable thereto, on deposit in the AXA Equitable EQUI-Vest Deferred Variable Annuity,
Account No. 208925927, held in the name of Laura Ann Tordy, identified below in ¶ 38-39,
because based on the tracing described below, there is probable cause to believe that the funds in
that account contain proceeds traceable to the mail fraud utilized to execute the Ponzi scheme
described above.   Those funds are thus subject to forfeiture pursuant to 18 U.S.C. § 981(a) (1)
(C) and 28 U. S. C. § 2461(c), as property which constitutes or is derived from proceeds
traceable to a violation of 18 U.S.C. § 1341.

        **1.**     **Fraud Proceeds Paid By Keryc Accounts To Hartmann**

        30.     Jason Keryc had been a representative for AGAPE or AMA since about
March 2005 to early 2009.   He had several sub-representatives who worked on his team,
including Martin Hartmann.

        31.     Based on a review of bank and other records, law enforcement agents
determined that from about March 2005 to November 2008, Keryc, either in his own name or
through his nominee company Cyrek, Inc., received payments of approximately $15,225,000
from the Agape and AMA accounts, which were deposited to Bank of America a/c
004834638204, in the name of Cyrek, Inc., and Bank of America a/c 009485484461, in the name
of Jason Keryc.   Virtually all of these monies were investor funds and thus proceeds of the mail
fraud.     32.     On May 22, 2012, a grand jury in the Eastern District of New York
an Indictment charging Keryc and others with seventeen counts of mail and wire fraud arising
of the Ponzi scheme (18 U.S.C. §§ 1341, 1343, 3551, et seq.).   The criminal proceedings are

currently pending.  United States v. Keryc, CR-12-357 (Hurley, J.)

33.     Based on a review of bank and other records, law enforcement agents determined that Hartmann, a representative who had worked for Agape or AMA since September 2006 through early 2009, received in excess of $2,900,000 from Keryc and/or Cyrek, Inc., which were paid out of Agape or AMA investor monies and are thus proceeds of the mail fraud. Hartmann deposited those monies into the following accounts: Capital One a/c 6214001544 and 6214001536, both in the name of Ocean To Bay Tours, Hartmann's nominee business.  The monies in those accounts were investor funds and thus proceeds of the mail fraud.

### 2.     Fraud Proceeds Paid By Ocean To Bay Tours Accounts To Tordy

34.     Laura Ann Tordy, Hartmann's sister, was an account representative for Agape from 2006 to early 2009.  Based on a review of bank and other records, law enforcement agents determined that Tordy received approximately $500,000 in payments from Ocean to Bay Tours, which were paid out of Agape or AMA investor monies and are thus proceeds of the mail fraud.

35.     On February 27, 2007, Tordy and her husband, Christopher Tordy, opened, and were the signatories on an account at Capital One, account no. 6214001700, held in the name of Lujano Holdings Limited, their nominee company (the "Lujano Account").

36.     Between February 2007 and March 2007, $10,489.16 and approximately $19,615.00 were deposited into the Lujano Account from funds transferred from Capital One a/c 6214001544, in the name of Ocean To Bay Tours.  These monies consist of investor funds and are thus proceeds of the mail fraud.

37.     Between July 2007 through and including March 2008, approximately $470,816 was transferred from Ocean to Bay Tours, Account 6214001536 to the Lujano

These monies consist of investor funds and are thus proceeds of the mail fraud.

### 3.   Deposits of Fraud Proceeds Into The AXA Equitable EQUI-Vest Annuity

38.   On March 5, 2008, $22,000 was withdrawn from the Lujano Account and was deposited into an AXA Equitable EQUI-Vest Deferred Variable Annuity, Account No. 208925927 held in the name of Laura Ann Tordy.

39.   Presently, the balance in this account is $23,064.23.  These monies consist of investor funds and are thus proceeds of the mail fraud.

### E.   Conclusion

40.   Based on the foregoing, your deponent respectfully requests that a warrant be issued authorizing Special Agents of the FBI and USPIS to effect the seizure of the contents of Woori America Bank Account 601001118, held in the name of Victoria Keenen, and AXA Equitable EQUI-Vest Deferred Variable Annuity, Account No. 208925927 held in the name of Laura Ann Tordy, and directing the financial institutions at which the accounts are established to freeze the contents of the account and to refuse the withdrawal of any amount from the account by anyone other than the FBI and USPIS, and while any contents of the accounts are frozen in place to accrue any deposits, interest, dividends and other amounts credited to the accounts until the FBI and USPIS directs that the contents of the accounts be finally liquidated and no contents remain.

11

41.     A seizure warrant issued pursuant to 21 U.S.C. § 853(f) is requested, due to the availability of moving funds through automated teller machines (ATMs), internet transfers and wire transfers, as an order under 21 U.S.C. § 853(e) may not be sufficient to assure the full availability of currency for forfeiture.

I hereby declare that the foregoing statements are true and accurate to the best of my knowledge, information and belief.

Dated:   Central Islip, New York
         December, 2013

_____
ROBERT M. CAPPADONA
Special Agent
Federal Bureau of Investigation

Sworn to before me this
12ᵗʰ day of December, 2013

_____
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

This declaration and the seizure warrants are to be filed under seal until further order of the court.

_____
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK